ROBERTSON, Justice,
concurring.
Although I have no doubt that our original decision of April 17, 1985, reaches the correct result, reflection has made it appear at least to me that our statement of the bases of our decision in this admittedly factually oddball case could stand supplementation.
This is not a case we may decide by reference to any notions of fairness or justice or the natural equities of the matter. The adjudication of this case is the function of Code, in this instance the Uniform Commercial Code, as enacted by the legislature in this state, Miss.Code Ann. §§ 75-1-101, et seq., coupled and supplemented by our law regarding separation agreements incident to divorce proceedings and our law of contracts generally. See Miss.Code Ann. § 75-1-103 (Supp.1984). The time for arguments of fairness and equity and “do right” was before the enactment of the Code. Those kinds of considerations went into the shaping of the UCC. Our task now is the faithful application and enforcement of that carefully honed code.
In this context I recite what I regard as the operative facts.
Prior to May 17, 1982, Betty S. Crosby held a $100,000.00 interest in a $280,000.00 note dated November 6, 1980, made originally by Century Mississippi Corporation. The note was physically held by Mrs. Crosby’s attorney, W. Dean Belk of Indianola, Mississippi.
On May 17, 1982, Ira T. Crosby, Jr. executed a security agreement in favor of Peoples Bank of Indianola wherein he conveyed to the bank a security interest in the remaining $180,000.00 of the November 6, 1980 Century note. Significantly the bank did not take possession of the collateral (the note) nor did it give notice to Mrs. Crosby or her attorney of its security interest.
On June 9, 1982, at a time when neither Mrs. Crosby nor her attorney had any knowledge or notice of this security interest so recently acquired by Peoples Bank, Ira T. Crosby and Betty S. Crosby executed a settlement agreement in contemplation of obtaining a divorce on grounds of irreconcilable differences. Miss.Code Ann. § 93-5-2 (Supp.1984). Pursuant to that agreement Ira T. Crosby, Jr., unconditionally obligated himself to convey unto Betty S. Crosby “all of his interest in the [Century note] dated November 6, 1980, ... as lump sum alimony and in lieu of child sup-port_” The note was not physically endorsed at the time. The separation agreement provided that it might be incorporated into a final decree of divorce, but the validity and enforcibility of the obligations undertaken therein were in no way dependent thereon.
On June 16, 1982, Peoples Bank of Indi-anola gave to Mr. Belk, as Mrs. Crosby’s attorney, written notice of its claim of a *958 security interest in the $180,000.00 balance of the Century note, this notice being received by Belk on June 17, 1982. This was the first knowledge Belk or Mrs. Crosby had of the bank’s security interest.
On June 28, 1982, Ira T. Crosby, Jr., physically endorsed and delivered the remaining balance of the note in favor of Betty S. Crosby.
I begin with the proposition stated in the opinion of April 17, 1985, that the separation agreement “constituted a valid, enforceable contract at the time of its execution and delivery on June 9, 1982”. If Ira Crosby had not prior thereto granted a security interest to the bank regarding the same note and had merely unconditionally obligated himself to convey to Mrs. Crosby via the settlement agreement, there could be no question but that Betty S. Crosby held a legal claim of entitlement to this promissory note enforceable in a court of law. Miss.Code Ann. § 75-3-201(3) (1972).
I would emphasize that Ira Crosby did not convey the note as collateral to be held as security for his performance of alimony or other obligations. His conveyance of his interest in the note was in discharge of his alimony and support obligations, not to secure their discharge. In short, the note was alimony and support. In my view Betty S. Crosby’s interest in the note may not fairly be classified as a security interest within Miss.Code Ann. § 75-1-201(37) (1972), although little if anything turns on the point.
Our next inquiry concerns the nature and extent of the right of Peoples Bank of Indianola in Ira T. Crosby’s remaining $180,000.00 interest in the promissory note. Without question, the bank held a security interest in this portion of the note. Miss. Code Ann. §§ 75-1-201(37) and 75-9-203 (1972). As of May 17, 1982, Ira T. Crosby had signed a security agreement in favor of the bank describing his interest in the Century note, he had rights in that note, and value had been given by the bank in the form of the renewal of prior Crosby notes. Miss.Code Ann. § 75-9-203(1) (1972). Moreover, that security interest had become enforceable as between the parties. Miss.Code Ann. § 75-9-203(2) (1972).
What is important is that the bank’s security interest had not been perfected before June 9, 1982. Ordinarily, a security interest in an instrument [and there can be no question but that the Century note was an “instrument” within Miss.Code Ann. §§ 75-3-102(l)(e) and 75-9-105(1)©] “can be perfected only by the secured party’s taking possession, _” Miss.Code Ann. § 75-9-304(1) (1972). Without contradiction, the bank never took possession of the note. At all times it remained in the hands of Mrs. Crosby’s attorney, W. Dean Belk. To be sure, Miss.Code Ann. § 75-9-305 (1972) sanctions “constructive possession” as an alternative means of perfection, by virtue of which the bank’s security interest may be said to have become perfected on June 17, 1982, when Belk received notice of the bank’s interest. This does not change the fact that the bank’s security interest was wholly unperfected on June 9, 1982.
This brings us to the critical section of the UCC. Miss.Code Ann. § 75-9-301(l)(c) (1972). That statute, in pertinent part, provides that
An unperfected security interest is subordinate to the rights of ..., in the case of ... instruments ..., a person who is not a secured party and who is a ... buyer not in ordinary course of business ... to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected.
Taking it slowly, we have established that the Century note in which the parties claim conflicting interest is an “instrument”. Betty S. Crosby “is not a secured party”— as explained above, the separation agreement does not create a security interest. Moreover, a taking incident to a settlement agreement in contemplation of divorce is rather clearly a taking “not in ordinary course of business”. Betty S. Crosby thus meets the conditions of Section 75-9-301(l)(c) which provides that a security in *959 terest, such as that held by Peoples Bank of Indianola, is subordinate to her rights
to the extent that [s]he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected.
Again going slowly, I regard that the obligations undertaken by and the conditions and releases made by Betty S. Crosby in the separation agreement constitute “giving value” within Section 75-9-301(l)(c). That Betty S. Crosby’s attorney at all times held the note qualifies as her having received delivery of the collateral, delivery referring to an acquisition of physical possession and nothing more. Miss.Code Ann. § 75-1-201(14) (1972). The parties do not in any way suggest that prior to June 9, 1982, Betty S. Crosby or her attorney had knowledge of the bank’s then unperfected security interest. Even though the bank thereafter perfected its security interest by giving notice to Belk as allowed by Section 75-9-305 on June 17, 1982, the horse was gone. Under these circumstances Section 75-9-301(l)(c) provides without room for doubt that the bank’s security interest is subordinate to the rights of Betty S. Crosby-
A hypothetical analogy may be useful. Assume that the interest held by Betty S. Crosby were a security interest (which in fact and in law it is not). If that be so, the first-to-be-perfect rule of Miss.Code Ann. § 75-9-312(5)(a) (1972) comes into play and the bank still loses, viz., Betty Crosby’s “security interest” has been perfected by her (actually her attorney’s) possession of the collateral on June 9, 1982, see Miss. Code Ann. § 75-9-304(1) (1972), while the bank’s security interest was not perfected until June 17, 1982.
We understand that the bank on June 15, 1982, filed its “security agreement” with the chancery clerk of Sunflower County no doubt in lieu of the filing of a financing statement, see Miss.Code Ann. § 75-9-401 (Supp.1984) and on August 17, 1982, it filed with the secretary of state. These filings are wholly ineffective to accomplish anything in that the type of collateral, here an instrument, is not one a security interest in which is susceptible of perfection by filing. Miss.Code Ann. § 75-9-304(1). Beyond that these filings were made after June 9, 1982. '
A final point needs to be made. The actual endorsement of the note by Ira T. Crosby, Jr. to Betty S. Crosby did not occur until June 28, 1982. This is of no moment. To be sure, endorsement was necessary to make the note enforceable against its maker, Century Mississippi Corporation. Miss. Code Ann. § 75-3-202 (1972). Negotiation and endorsement, however, were in no way legally requisite to Betty S. Crosby’s acquisition of an unconditional and wholly enforceable claim of entitlement to the remaining $180,000.00 portion of the note, for Section 75-3-201(3) provides that transfer of an instrument for value “gives the transferee the specifically enforceable right to have the unqualified endorsement of the transferor”.